**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **ROGER WESTGATE,** | : | | |
| **Plaintiff** | : | | |
| | : | **No. 1:16-cv-1853** | |
| **v.** | : | | |
| | : | **(Judge Kane)** | |
| **KEYSTONE BLIND ASSOCIATION,** | : | | |
| **Defendant** | : | | |

**MEMORANDUM**

Before the Court in the above-captioned case are the following motions requiring

resolution: a Motion to Dismiss for Failure to State a Claim (Doc. No. 10)[1], a Motion for

Protective Order (Doc. No. 13), a Motion for Leave to File Sur Reply Brief to Motion for

Protective Order (Doc. No. 20), and a Motion for Leave to File Sur Reply Brief in Response to

Defendants' Reply Brief in Consideration of Their Motion to Dismiss (Doc. No. 28).  The

motions are briefed and ripe for disposition.  For the reasons that follow, the Motion to Dismiss

will be granted in part and denied in part, the Motion for Protective Order will be denied, and

Plaintiff's Motions for Leave to File Sur Reply Brief will be denied.

**I.    BACKGROUND[2]**

On March 31, 2014, Plaintiff Roger Westgate began working for Defendant Keystone

Blind Association ("KBA"), a non-profit organization that operates welcome centers and rest

---

[1] There is also an earlier filed Motion to Dismiss for Failure to State a Claim (Doc. No. 5), pending on the docket; however, the subsequent filing of Plaintiff's First Amended Complaint rendered that motion moot, and it will be denied as such.

[2] The following facts underlying Plaintiff's claims are taken from Plaintiff's First Amended Complaint. (Doc. No. 8.)

1

areas in various locations on the interstate highway system in the Commonwealth of Pennsylvania.  (Doc. No. 8 ¶¶ 5-7, 10.)  Defendant provides cleaning and maintenance services at the welcome centers and rest areas.  (Id. ¶ 8.)  Plaintiff was employed as a supervisor for a welcome center and rest area at the Pennsylvania/New Jersey border known as Site F, and a rest area on Interstate 80 in Monroe County, known as Site 41. (Id. ¶ 9.)

On March 10, 2015, Plaintiff learned from another employee of Defendant, Bertha Canfield, that a male employee of Defendant had taken photographs of a man in his underwear in the men's bathroom at the welcome center (Site F).  (Id. ¶¶ 64, 67.)  Plaintiff alleges that Ms. Canfield was asked by the male employee "if he could show her something," and then he showed her a photo from his cell phone of a man standing in the men's bathroom of a facility managed by Defendant, in his underwear with his pants pulled down to his ankles.  (Id. ¶ 67.)  Plaintiff asserts that Ms. Canfield was upset and offended by the sexual nature of the male employee's actions, and reported the incident to Plaintiff.  (Id. ¶¶ 68-69.)

Plaintiff asked her to document the incident in the form of a letter that he would forward to Defendant's management.  (Id. ¶ 70.)  Ms. Canfield did so, and Plaintiff forwarded the letter to Melissa Means, Vice President of Human Resources for Defendant.  (Id. ¶¶ 71-72.)  Plaintiff alleges that by his actions, he opposed the unlawful practice of sexual harassment in the workplace of Defendant.  (Id. ¶ 73.)  Plaintiff alleges that pursuant to the policies and procedures of Defendant, he investigated Ms. Canfield's complaint by asking other employees of Defendant about the conduct of the male employee.  (Id. ¶ 75.)  Plaintiff asserts that after Defendant received Ms. Canfield's letter transmitted by him, Defendant discharged Plaintiff on March 12, 2015, citing as the reason for discharge that he had lied about speaking to employees in the

course of his investigation.  (Id. ¶¶ 76-77.)  Plaintiff maintains that he did not lie about speaking to employees in the course of his investigation.  (Id. ¶ 78.)  Plaintiff further alleges that Defendant did not discipline the male employee who had taken the photograph.  (Id. ¶ 79.) Plaintiff alleges that Defendant terminated him in retaliation for his report of wrongdoing.  (Id. ¶ 81.)

On September 2, 2015, Plaintiff filed a charge of illegal retaliation by Defendant pursuant to Title VII of the Civil Rights Act of 1964 with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶60.)  That charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), as a claim under the Pennsylvania Human Relations Act ("PHRA").  (Id.)  Plaintiff received a notice of right to sue from the EEOC on May 31, 2016. (Id. ¶ 61.)

This action was initiated in the Monroe County Court of Common Pleas on August 2, 2015, by way of filing a Writ of Summons.  (Doc. No. 1.)  On May 26, 2016, Plaintiff filed his initial complaint against Defendant, alleging a single cause of action under the Pennsylvania Whistleblower Law ("PWL"), 43 P.S.§ 1421 et seq.  (Id.)  Subsequently, Plaintiff filed a First Amended Complaint alleging an additional cause of action under Title VII of the Civil Rights Act of 1964, which prompted Defendant's removal of the action to this Court on September 8, 2016.  (Id.)

On September 14, 2016, Defendant filed a Motion to Dismiss for Failure to State a Claim (Doc. No. 5), and supporting brief (Doc. No. 6).  On September 30, 2016, Plaintiff filed another "First Amended Complaint," ("FAC"), asserting claims in three counts: Count 1 asserts a claim under the PWL, Count 2 asserts a retaliation claim under Title VII of the Civil Rights Act of

1964, 42 U.S.C. §2000e-3(a), and Count 3 asserts a retaliation claim pursuant to the PHRA, 43 P.S. §955(a).

Defendant again filed a Motion to Dismiss For Failure to State a Claim (Doc. No. 10), seeking dismissal of all three counts of Plaintiff's subsequently filed First Amended Complaint. As Defendant's Motion to Dismiss was being briefed, Defendant filed a Motion for Protective Order, seeking the protection of the Court to prevent certain discovery sought by Plaintiff related to his PWL claim.  (Doc. No. 13.)  Plaintiff filed his Motion for Leave to File a Sur-Reply Brief in connection with Defendant's Motion for Protective Order (Doc. No. 20), which Defendant did not concur in.

The Court held a case management conference on December 1, 2016, at which time the parties expressed their willingness to discuss settlement prior to discovery.  (Doc. No. 24.) Accordingly, the Court referred the matter to Magistrate Judge Martin C. Carlson for settlement discussions.  (Doc. No. 25.)  In the meantime, on December 15, 2016, Plaintiff filed another Motion for Leave to File Sur-Reply Brief in Response to Defendant's Reply Brief to their Motion to Dismiss.  (Doc. No. 28.)  Defendant opposed the Motion, and filed a brief in opposition on December 19, 2016.  (Doc. No. 29.)  During a status call with the Court on February 10, 2017, the parties reported that settlement negotiations were unsuccessful.

Jurisdiction is based on Plaintiff's claim under Title VII, 42 U.S.C. § 2000e-3(a).  This Court exercises supplemental jurisdiction over Plaintiff's PHRA and PWL claims pursuant to 28 U.S.C. § 1367.

## II.    LEGAL STANDARD

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

4

of the complaint's factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint

must contain "a short and plain statement of the claim showing that the pleader is entitled to

relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon

which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks

omitted) (interpreting Fed. R. Civ. P. 8(a)).  Generally, a court considering a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6) must determine whether the complaint

contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on

its face."  Iqbal, 556 U.S. at 678.

        Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit

requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion:

(1) first, a court should separate the factual and legal elements of a claim, accepting well-pleaded

factual matter and disregarding legal conclusions; (2) second, a court should determine whether

the remaining well-pled facts sufficiently demonstrate that a plaintiff has a "plausible claim for

relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556

U.S. at 679).  Facial plausibility exists when the plaintiff pleads factual content "that allows the

court to draw a reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (internal citations omitted).

        In conducting its analysis, a court must accept all well-pleaded factual allegations in the

complaint as true for purposes of determining whether the complaint states a plausible claim for

relief, and must view the factual allegations in the light most favorable to the plaintiff.  Phillips

v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  The court's determination on a Rule

12(b)(6) review is not whether the non-moving party "will ultimately prevail," but whether that

party is "entitled to offer evidence to support the claims." United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3 259, 302 (3d Cir. 2011) (internal citations omitted).  The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III.   DISCUSSION

### A.   Motion to Dismiss

In moving to dismiss Plaintiff's complaint, Defendant makes two arguments with regard to Plaintiff's claim under the PWL: (1) that Defendant is not an "employer" for purposes of the PWL by virtue of its role as sub-contractor providing maintenance services to the Pennsylvania Department of Transportation, and (2) that the alleged improper actions by a male employee of Defendant do not constitute "wrongdoing" by an employer or public body sufficient to give rise to a claim under the PWL.  (Doc. No. 11 at 1.)  Further, with regard to Plaintiff's Title VII and PHRA retaliation claims, Defendant argues that the delivery of a grievance letter by a supervisor

concerning a co-worker's alleged improper behavior does not suffice to support a retaliation claim.  (Id. at 1-2.)

In opposition, Plaintiff argues that he has pled sufficient facts that Defendant is an "employer" and "public body" within the meaning of the PWL, and further, that he has pled facts supporting a claim of "wrongdoing" within the meaning of the PWL.  (Doc. No. 22 at 10-22.) He also maintains that he has pled facts supporting Title VII and PHRA retaliation claims. (Id. at 22-26.)  The Court first addresses Defendant's arguments regarding Plaintiff's Title VII and PHRA claims.

### 1.    Title VII and PHRA Retaliation Claims

Counts two and three of Plaintiff's FAC assert identically-worded retaliation claims under 42 U.S.C. § 2000e-3 and the PHRA.  Both counts incorporate the prior allegations of the FAC and allege that "[t]he actions described herein were in violation of the civil rights of Plaintiff and were committed by Defendant in retaliation for his protected activity." (Doc. No. 8 ¶¶ 87-90.)[3]

The relevant provision of 42 U.S.C. § 2000e-3, "Other unlawful employment practices," provides as follows:

(a)    Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.  It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job

---

[3] The Third Circuit Court of Appeals has held that claims under the PHRA are to be analyzed consistent with the standards applied to a Title VII claim;  accordingly, the following discussion refers to Title VII but applies to both statutes.  Gomez v. Allegheny Health Serv., Inc., 71 F.3d 1079, 1084 (3d Cir. 1998), cert. denied, 518 U.S. 1005 (1996) (PHRA and Title VII are "construed consistently").

training programs, to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17].

42 U.S.C. § 2000e-3(a).

Defendant correctly notes that to establish a <u>prima</u> <u>facie</u> case of retaliation under Title VII, a plaintiff must show that: (1) the employee engaged in a protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. <u>Nelson v. Upsala Coll.</u>, 51 F.3d 383, 386 (3d Cir. 1995). With regard to "protected activity," the anti-retaliation provision protects those "who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." <u>Moore v. City of Phila.</u>, 461 F.3d 331, 341 (3d Cir. 2006). In either case, while the plaintiff in a retaliation case "need not prove the merits of the underlying discrimination complaint," <u>id.</u> at 344, he must hold "an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." <u>Id.</u> at 341 (quoting <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 271 (2001)).

In his First Amended Complaint, Plaintiff alleges that he received the oral report of a female employee of Defendant, Bertha Canfield, alleging that a male employee of Defendant showed her photographs that he had taken of a man in a restroom (managed by Defendant) with his pants down. (Doc. No. 8 ¶ 64.) Plaintiff alleges that the actions of the male employee "constituted sexual harassment by means of the creation of a sexually hostile workplace environment." (<u>Id.</u> ¶ 66.) Plaintiff asserts that he asked that Ms. Canfield document her complaint in a letter that he would forward to Defendant's management. (<u>Id.</u> ¶ 70.) Plaintiff

forwarded the letter drafted by Ms. Canfield reporting the incident to Defendant's Vice-President of Human Resources, and alleges that, by doing so, "opposed the unlawful practice of sexual harassment in the workplace of Defendant." (Id. ¶¶ 72-73.)

While Plaintiff did not attach a copy of the letter drafted by Ms. Canfield to his First Amended Complaint, Defendant appended the letter as Exhibit B to its motion to dismiss. (Doc. No. 10-3.) The Court can consider the letter in connection with its decision on the motion to dismiss, without converting the motion to one for summary judgment, as the letter is a document "incorporated by reference or integral to [Plaintiff's] claim." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks and citation omitted); see Mosdos Chofetz Chaim Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) ("To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents.") (internal quotation marks and citation omitted). Plaintiff's First Amended Complaint makes a clear and substantial reference to Ms. Canfield's letter; in fact, as described above, the forwarding of her letter to management is the very act that Plaintiff alleges constitutes "protected activity." Plaintiff asserts that he was subsequently terminated "in retaliation for his protected activity in forwarding the complaint of sexual harassment and for his association with employee who had complained of sexual harassment." (Id. ¶ 80.)

As noted above, while Plaintiff need not prove the merits of any underlying discrimination claim in asserting a retaliation claim, he must have an "objectively reasonable belief" that the activity he opposed constituted unlawful discrimination. Moore, 461 F.3d at 341 (citation omitted). Defendant argues that the alleged complaint by Ms. Canfield, concerning a single incident between co-workers occurring months earlier, without more, does not suffice to

support an "objectively reasonable belief" on the part of Plaintiff or Ms. Canfield as to the existence of a sexually hostile work environment.  The Court must agree.

With regard to a hostile work environment claim, a plaintiff must show that he "endured harassing behavior sufficiently severe to alter the terms, conditions or privileges of her employment."  E.E.O.C. v. Novartis Pharm. Corp., No. 2:05-cv-404, 2007 WL 1905892, at *8 (W.D. Pa. Sept. 28, 2007) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  "An isolated incident amounts to a change in the terms, conditions or privileges of one's employment only if it is 'extremely serious.'" Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775 (1998)); see Breeden, 532 U.S. at 270-71 (where single incident could not amount to a change in the 'terms and conditions of employment,' plaintiff's complaint about the incident did not qualify as protected activity).

Here, the isolated incident reported by Ms. Canfield occurred months before she reported it.  (See Doc. No. 10-3 at 1 (letter written by Ms. Canfield dated 3/10/15 states that "this incident happen in the summer - last year 2014").)  Accordingly, the First Amended Complaint's allegations do not plausibly support an "objectively reasonable belief" of a change in the terms and conditions of Ms. Canfield's employment sufficient to constitute a sexually harassing hostile work environment, as is required to state a claim under the anti-retaliation provision.

Further, even assuming that the isolated incident alleged sufficed to support an "objectively reasonable belief" of a sexually harassing hostile work environment on the part of Plaintiff or Ms. Canfield, "[w]hen the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable."  Huston v. Procter & Gamble Paper Prod. Corp., 568 F.3d 100, 104 (3d Cir. 2004) (citing Kunin v. Sears Roebuck and Co.,

175 F.3d 289, 293 (3d Cir. 1999)).  "Rather, employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint, or alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  Id. (citation omitted).  Plaintiff's First Amended Complaint is devoid of any facts alleging that Defendant knew or should have known of the incident and failed to take prompt remedial action.  Accordingly, the facts alleged by Plaintiff in his First Amended Complaint fail to support a reasonable inference that Defendant is liable for retaliation pursuant to 42 U.S.C. § 2000e-3(a) and the PHRA, and Defendant's motion to dismiss those counts of the First Amended Complaint will be granted.  As Plaintiff has requested leave to amend his First Amended Complaint  in the event the Court found the allegations of his First Amended Complaint insufficient, (Doc. No. 22 at 25 n. 12), the Court will grant Plaintiff leave to amend his First Amended Complaint with respect to the Title VII and PHRA claims.

### 2.    Plaintiff's Whistleblower Claim

In light of the Court's resolution of Defendant's motion to dismiss Counts two and three of Plaintiff's FAC, and the fact that there is currently no viable federal claim before the Court enabling it to exercise supplemental jurisdiction, the Court declines to address Defendant's arguments as to dismissal of Plaintiff's state law PWL claim at this time. In the event that Plaintiff successfully pleads a Title VII claim, the Court may exercise supplemental jurisdiction over that state law claim.  Accordingly, the Court will deny Defendant's motion to dismiss Count one of Plaintiff's FAC, without prejudice to its ability to renew the motion upon the amendment of Plaintiff's First Amended Complaint.

### B.    Motion for Protective Order

Similarly, as Defendant's motion for protective order relates to discovery matters regarding Plaintiff's state law PWL claim, the Court declines to address Defendant's motion for protective order at this time.  In the event that Plaintiff successfully pleads a Title VII claim, the Court may exercise supplemental jurisdiction over that state law claim.  Accordingly, the Court will deny Defendant's motion for protective order, without prejudice to its ability to renew the motion upon the amendment of Plaintiff's First Amended Complaint.

## IV.   CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part Defendant's motion to dismiss.  The motion will be granted as to Counts two and three.  Counts two and three will be dismissed without prejudice, and Plaintiff will be granted leave to amend his First Amended Complaint with regard to those counts.  As to Count one, the motion to dismiss will be denied without prejudice to Defendant's ability to renew the motion to dismiss upon the amendment of Plaintiff's First Amended Complaint.  The motion for protective order will be similarly denied without prejudice to Defendant's ability to renew the motion upon the amendment of Plaintiff's First Amended Complaint.  Further, in light of the Court's resolution of the motions to dismiss and for protective order, Plaintiff's motions for leave to file sur-reply briefs will be denied.  An order consistent with this memorandum follows.

 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

12